### CARROLL v. CHAUNCEY.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

MONEY RECEIVED (§ 18*)—PURPOSE—EVIDENCE—WEIGHT.

    Weight of the evidence *held* to show that plaintiff, bondsman for a fugitive, agreed to pay and did pay money to defendant's bank to aid in bringing back, as well as in locating, the fugitive, and hence was not entitled to recover it on the ground that it had been used for a purpose other than agreed on.

    [Ed. Note.—For other cases, see Money Received, Cent. Dig. § 72; Dec. Dig. § 18.*]

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by Lawrence F. Carroll against George W. Chauncey. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and GAYNOR, BURR, RICH, and MILLER, JJ.

John J. Kuhn, for appellant.

James F. Lynch (Daniel E. Lynch, on the brief), for respondent.

MILLER, J. In the spring of 1904 one Forbes was arrested on the complaint of an officer of the Mechanics' Bank of Brooklyn, charging him with obtaining money from the bank by means of forged checks. Bail was fixed in the sum of $5,000. The plaintiff, though a stranger to him, became one of his bondsmen, and he was released. Shortly thereafter he absconded. The bank employed Pinkerton detectives to locate the fugitive. It was learned that his wife was about to sail for Buenos Ayres, and arrangements were made for a detective to sail at the same time. At about that time a conversation occurred at the bank between the defendant, the president of the bank, and the plaintiff. The plaintiff's claim is that, as a result of that interview, he agreed to contribute to the defendant the sum of $500 to be used by the latter in "bringing back" the fugitive, and that he subsequently did contribute said sum, but that it was used toward defraying the expenses incurred in locating the fugitive, and not in bringing him back. The defendant's position is that the money was advanced to the bank, not to the defendant individually, and that it was used for the purposes intended.

The overwhelming weight of the evidence supports the defendant's contention. It cannot be doubted that the plaintiff knew that the defendant was the president of the bank and was acting as its representative. He knew the charge on which Forbes had been arrested, he went

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the bank uninvited, unless his statement that he met some man in the street, who told him to go there, is to be credited, and the letter, calling upon him to pay the $500 as he had agreed to do, was signed by the defendant as president of the bank. Although the plaintiff tried to make it appear that Forbes had already been located when that interview occurred, the evidence plainly established that he had not been located, except as his location was suspected from the supposed destination of his wife. The plaintiff says that the interview occurred in the spring of 1904. In July, 1904, a cablegram was received from the detective, who had sailed with the wife of Forbes, advising the bank that Forbes had been located in Buenos Ayres, but that he would oppose extradition. Whereupon arrangements were made with the district attorney of New York county to send a county detective with extradition papers to get Forbes, and the officer sent returned with him on the 5th of October. After the interview between the plaintiff and the defendant, the bank paid to the Pinkerton Detective Agency at different times the sum of $2,834.80 for services and expenses subsequently incurred. It paid certain sums for legal expenses, and it advanced to the said county detective, because there was no money in the contingent fund of the county which could be used for the purpose, the sum of $2,300 to defray his expenses. Of the latter sum the county of New York paid back the sum of $1,851.30, which it later compelled the plaintiff to pay because of his liability on the bond; and the plaintiff says that that was the only expense legitimately incurred in "bringing back" the fugitive, and toward which he agreed to contribute the sum of $500. But the bank had no interest in arranging with the plaintiff to contribute to that sum. The county of New York was bound to pay those expenses. The bank merely loaned the money. Obviously the expenses to which the bank desired the plaintiff to contribute were those for which it could not be reimbursed by the city.

The plaintiff was liable in the sum of $5,000, and it is evident that he was anxious to have every effort made to apprehend the fugitive, and considered himself fortunate because he had to contribute only a part of the expense, instead of being liable for all. He did not pay the said sum of $500 until January, 1905, when several letters had been written him by the defendant and the attorney of the bank, calling upon him to pay the money as he had agreed to do; and in one of those letters he was advised that his obligation to contribute the sum of $500 as agreed upon was entirely independent of his liability to the city by reason of the bond. But, aside from that, it is plain that, when the arrangement was made, the parties contemplated the expenditure of money in locating and bringing back the fugitive, and that the bank subsequently expended much more than $500 for those purposes. While there is a dispute respecting the precise words used by the parties, the conceded facts plainly show what they intended. If the words used were "bring back," the parties understood that bringing back involved locating the fugitive.

The judgment is reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.